```
                                                      USDC SDNY
                                                      DOCUMENT
                                                      ELECTRONICALLY FILED
                                                      DOC #:_____
UNITED STATES DISTRICT COURT                          DATE FILED:  10/27/16
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
   ADRIAN B. STRATTON,                               :
                                                     :
                              Plaintiff,             :
                                                     :       15-CV-1047 (VEC)
                   -against-                         :
                                                     :       MEMORANDUM
   ERNST & YOUNG, LLP,                               :       OPINION & ORDER
                                                     :
                              Defendant.             :
                                                     :
-------------------------------------------------------------- X
```

VALERIE CAPRONI, United States District Judge:

Plaintiff Adrian Stratton, proceeding pro se, initiated this action against Defendant Ernst & Young LLP ("EY") alleging that EY refused to hire him because he is African-American, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, N.Y.C Admin. Code § 8-101 *et seq.* ("NYCHRL"). Stratton also alleges that EY refused to hire him because he was unemployed at the time he sought employment, in violation of the NYCHRL. EY has moved for summary judgment on all claims. Because Stratton has introduced no evidence creating a genuine dispute of material fact as to whether EY failed to hire him because of his race or unemployment status, EY's motion for summary judgment is GRANTED, and the case is DISMISSED.

## BACKGROUND[1]

Stratton, an African-American man who self-identifies as an "[e]xperienced management executive with 14+ years retail industry experience," became unemployed in July 2013. Def.

---

[1] The Court's account of the facts, where not disputed by Stratton, is based upon EY's Rule 56.1 Statement ("Def. 56.1 Stmt.") (Dkt. 38). Where relevant, the Court also compares Stratton's Opposition to EY's Rule 56.1 Statement ("Pl. 56.1 Stmt.") (Dkt. 41), and references other documents from the record.

1

56.1 Stmt. ¶¶ 31, 63-64. In February 2014, Stratton sought employment at EY. *Id.* ¶¶ 13-14, 42. He participated in EY's Employee Referral Program (the "Referral Program") and also applied directly to open job postings. *Id.* EY did not hire Stratton. *Id.* ¶¶ 40, 59.

## I. Stratton's Application through EY's Referral Program

The Referral Program incentivizes current EY employees to refer potential job candidates to the firm. *Id.* ¶ 5. The Referral Program is specifically designed for candidates who already have industry-related work experience. *Id.* ¶ 6. EY recruiters, assigned to different practice groups, review resumes submitted to them through the Referral Program, and approved applicants are then matched with potential job openings in the relevant practice group. *See id.* ¶¶ 12, 17, 20.

Stratton was referred through the Referral Program by Jason Hoff, an EY employee, for a position in EY's Advisory group ("Advisory"). *Id.* ¶ 13. Advisory provides external consulting services to government and business entities. *Id.* To be considered for employment with Advisory, a candidate in the Referral Program is typically required to have external consulting experience. *Id.* ¶ 28. External consulting experience involves working for a firm that provides services to clients, rather than providing advice to one's own employer. *Id.* Stratton, who has spent most of his professional career in the retail industry in "management, marketing and operations," acknowledges that he has no external consulting experience. *Id.* ¶¶ 31, 32, 35.

On February 24, 2014, EY informed Stratton that he had been recommended for a job at Advisory through the Referral Program. *Id.* ¶ 11. As directed, Stratton uploaded a copy of his resume and completed EY's online application. *Id.* ¶¶ 11, 14, 15. The resume Stratton uploaded provided his full name and educational history and indicated that he was currently employed. Declaration of Stacey A. Bentley ("Bentley Decl.") Ex. B (Dkt. 35-2). When Stratton completed

EY's online application, however, he stated that his last employment had ended in July 2013. *Id.* Ex. E, at 5. The online application also asked for demographic information including race, ethnicity, gender, and disability status, *id.* Ex. E, at 8, but EY keeps this information confidential and does not send it to recruiters. Def. 56.1 Stmt. ¶ 21.[2]

On February 27, 2014, an EY recruiter assigned to Advisory reviewed Stratton's resume to determine whether he was qualified for a position with Advisory. *Id.* ¶ 23. EY's guidelines provide that Advisory recruiters should primarily look for applicants with experience at consulting firms. *Id.* ¶ 29. When a candidate does not have external consulting experience, EY generally does not view other professional experience as an acceptable substitute. *Id.* ¶ 28. Stratton has never worked for a consulting firm and has no external consulting experience. *Id.* ¶¶ 34-35. The recruiter decided not to advance Stratton in the Referral Program hiring process. Declaration of Julie Meyer ¶ 24 ("Meyer Decl.") (Dkt. 36). Stratton was notified of this decision on March 3, 2014. Def. 56.1 Stmt. ¶ 40.[3]

## II.   Stratton's Allegations of Employment Discrimination

Stratton alleges that EY failed to hire him because of his race and unemployment status. Compl. 5 (Dkt. 2). Stratton asserts that the recruiters knew his race because: (1) his resume indicated he attended a historically black university with which EY has a relationship; (2) the recruiters may have gained access to the confidential demographic information he provided on

---

[2]   Plaintiff acknowledges that EY keeps this data confidential but complains that "Defendant has produced no evidence that recruiters absolutely **cannot access this data** by other means." Pl. 56.1 Stmt. ¶ 21 (emphasis in original).

[3]   Stratton also applied directly to EY for six jobs outside of the Referral Program. Def. 56.1 Stmt. ¶ 42. Five of those job postings were later cancelled, and no one was hired to fill those roles. *Id.* ¶ 43. The remaining job posting, which was also for a position in Advisory, called for, among other qualifications, "extensive experience as a consultant in a corporate environment" and "deep knowledge of [the] consulting landscape." *Id.* ¶ 48. Although Stratton initially included in his Complaint allegations regarding EY's failure to hire him for positions he applied to outside of the Referral Program, he abandoned entirely those claims in his response to Defendant's Motion for Summary Judgment. Pl. 56.1 Stmt. ¶¶ 43, 45.

EY's online application; or (3) the recruiters reviewed his LinkedIn profile and profile picture. Pl. 56.1 Stmt. ¶¶ 21, 25, 69. Stratton also asserts that the recruiters knew he was unemployed because his online application so indicated. *Id.* ¶ 71. Finally, in his opposition to EY's motion for summary judgment, Stratton for the first time raised a disparate impact theory of liability with respect to the Referral Program. Pl. Opp. 1 (Dkt. 43).

EY counters with a sworn statement from its recruiter maintaining that she did not know, investigate, or make any assumptions about Stratton's race when reviewing his application and that she reviewed his resume—which suggested that he was currently employed—for work history and not for educational history. Def. 56.1 Stmt. ¶¶ 24-26. Furthermore, EY maintains that Stratton was not qualified for a position in Advisory. Def. Mem. 7 (Dkt. 39). As to the belatedly-asserted disparate impact claim, EY argues that Stratton should be precluded from adding a new theory of liability at the summary judgment stage and that, even if not precluded, Stratton's argument fails because the statistics on which Plaintiff relies compare EY referrals countrywide with offers for employment in EY's New York office, an improper comparison. Def. Reply 6 (Dkt. 43).

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (quotation marks omitted). "The Court must 'construe the facts in the light most favorable to the non-

moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Pandora Media, Inc. v. Am. Soc'y of Composers, Authors and Publishers*, 785 F.3d 73, 77 (2d Cir. 2015) (*per curiam*) (quoting *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008)). Nevertheless, "to defeat summary judgment, 'a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 197 n.10 (2d Cir. 2014) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)).

When a party moves for summary judgment against a pro se litigant, courts afford the non-moving party "special solicitude." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). District courts must read a pro se litigant's "pleadings liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks and citations omitted). Courts "are less demanding of [pro se] litigants generally, particularly where motions for summary judgment are concerned." *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014). This lower standard for pro se plaintiffs does not, however, "relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen*, 351 F.3d at 50 (quotation marks and citations omitted).

**I.     Race Discrimination Claims under Title VII and NYSHRL**

Claims arising under Title VII and NYSHRL are governed by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015); *Richards v. N.Y.C. Dep't of Educ.*, No. 13-CV-16 (VEC), 2015 WL 4164746, at *6 (S.D.N.Y. July 10, 2015). "Under *McDonnell Douglas*, a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-

discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014).

### A. Stratton Does Not Make Out a Prima Facie Case for Race Discrimination

To make a prima facie showing of race discrimination in the hiring context, a plaintiff must show that: "(1) he is a member of a protected category; (2) he applied for an available position; (3) he was qualified for the position; and (4) he was rejected under circumstances that give rise to an inference of discrimination." *Green v. Harris Publ'ns, Inc.*, 331 F. Supp. 2d 180, 187 (S.D.N.Y. 2004) (citing *de la Cruz v. N.Y.C. Human Resources Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996)). The parties only dispute the last two elements. Because Stratton is unable to satisfy the last two elements, he has not made a prima facie showing that EY failed to hire him on the basis of his race.

#### 1. Stratton Was Not Qualified for a Position with Advisory

An employer, and not a job candidate, determines the relevant qualifications for an open position. *Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 29 (2d Cir. 1997) ("As we understand this element, being 'qualified' refers to the criteria the employer has specified for the position."); *Crews v. Trs. of Columbia Univ.*, 452 F. Supp. 2d 504, 526 (S.D.N.Y. 2006) ("Although [Plaintiff] may disagree with [employer's] determination […], courts are not permitted to second-guess the reasonableness of the employer's criteria for employment or the merits of its selection for the position." (citations omitted)); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 243-44 (1989) (referencing approvingly a Title VII interpretive memorandum asserting an employer's right to hire candidates qualified for the relevant position, as long as the employer

does not make hiring decisions on impermissible discriminatory grounds); *Griggs v. Duke Power Co.*, 401 U.S. 424, 434-35 (1971) (same).

EY clearly demonstrated its strong preference for candidates with external consulting experience in its guidelines for Advisory recruiters in the Referral Program. Def. 56.1 Stmt. ¶¶ 28-29. It is undisputed that Stratton has no external consulting experience. *Id.* ¶¶ 34-35. It is not for this Court to question EY's "decisions regarding the value placed on particular experience or education when evaluating job applicants." *Crews*, 452 F. Supp. 2d at 525 (citations omitted). Because Stratton has not shown that he met EY's criteria for a position with Advisory, he has failed to show that he was qualified for a position, and therefore has failed to prove the third element of a prima facie case. *See Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 127 (2d Cir. 2004) (rejecting plaintiff's discrimination claim because she could not show that she was qualified for the position to which she applied).

Plaintiff points out, however, that EY has not set external consulting experience as an absolute job requirement but has only stated that such experience is "typically" required. Pl. 56.1 Stmt. ¶ 38. Plaintiff argues that wiggle room leaves room for bias if, for example, recruiters do not uniformly enforce that "typical" requirement. *Id.* Plaintiff may be correct about the risk of a "typical requirement" that is something less than an absolute requirement, but he has not submitted a shred of evidence on which the Court could rely to conclude that there is a question of fact whether the EY recruiter who handled Stratton's application treated the "typical requirement" as anything other than a "requirement." The recruiter's declaration asserts that she treated external consulting experience as an absolute job requirement. Meyer Decl. at ¶ 24. Accordingly, even if the Plaintiff may be correct in the abstract, he has not shown that in this

case there is a genuine issue of material fact whether he was actually qualified for the job at issue.

### 2. No Facts Give Rise to an Inference of Discrimination

"Where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, so that 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)). "Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Id.*

In order to give rise to an inference of race discrimination, a plaintiff must show that the defendant employer knew plaintiff's race. *See McDowell v. T-Mobile USA, Inc.*, 307 F. App'x 531, 533 (2d Cir. 2009) (granting summary judgment when plaintiff could not show that defendants knew plaintiff's race at the time of their adverse decision). Viewing the evidence in the light most favorable to Stratton and giving him *very* wide latitude in light of his pro se status, he has presented evidence to create a question of fact whether the EY recruiter knew his race. He has introduced an EY diversity recruitment guide that instructed recruiters to look out for Hampton University— the historically black university from which Stratton obtained his MBA degree. Pl. 56.1 Stmt. ¶ 25; Declaration of Adrian B. Stratton Ex. C, at 18; Bentley Decl. Ex. B. On the other hand, EY has introduced sworn statements from the recruiter asserting that she did not know or investigate Stratton's race and that she did not review his resume for his educational history. Def. 56.1 Stmt. ¶¶ 24-26. This dispute between the parties raises a genuine issue of material fact.[4]

---

[4]   Stratton has introduced no evidence in support for his speculation that the EY recruiter may have reviewed his LinkedIn profile or may have gained access to his confidential demographic information.

Nevertheless, even assuming that a fact finder might conclude that the EY recruiter knew his race, Stratton has advanced no evidence that even remotely suggests discriminatory animus. Instead, he merely asserts that a "negative inference" can be drawn from the fact that EY recruiter discovered his race. Pl. 56.1 Stmt. ¶¶ 25-26. That is not sufficient. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."); *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371-72 (S.D.N.Y. 2005) ("[P]laintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn." (citations omitted)).

In the absence of any other evidence giving rise to an inference of discrimination, Stratton's complaint and subsequent filings, liberally construed, may be viewed as raising a disparate treatment claim. "A showing of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

Stratton has introduced statistics about EY's hiring through the Referral Program for the year 2014. Pl. Opp. 1. "[Statistics] are admissible to support a claim of discrimination even in a disparate treatment case involving a single plaintiff." *Stratton v. Dep't for the Aging for N.Y.C.*, 132 F.3d 869, 877 (2d Cir. 1997) (citing *Hudson v. Int'l Bus. Mach. Corp.*, 620 F.2d 351, 355 (2d Cir. 1980)). But in the case of statistics introduced to show disparate treatment, "because intent is the critical issue, only a comparison between persons evaluated by the same decision-

maker is probative of discrimination." *Smith v. Xerox Corp.*, 196 F.3d 358, 370-71 (2d Cir. 1999), *overruled on different basis by Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134 (2d Cir. 2006). This is the case because when "uncoordinated and independent employment decisions are made by different persons, statistics as to hiring by the overall entity may be less significant in demonstrating bias." *Coser v. Moore*, 739 F.2d 746, 750 (2d Cir. 1984). Stratton has introduced office and firm-wide statistics rather than evidence related to the particular EY recruiter who decided not to hire him. Pl. Opp. 1. Stratton's statistics are therefore not probative or pertinent to his disparate treatment claim. *See Smith*, 196 F.3d at 370-71 (dismissing plaintiff's disparate treatment claim because the statistical evidence presented did not raise an inference of discrimination).[5]

Because Stratton has introduced no facts to show that he was qualified for the position or that give rise to an inference of discrimination, he has not established a prima facie case that EY failed to hire him because of his race.

---

[5] Although Stratton did not advance this theory, he could also have attempted to show that other similarly situated applicants fared better in EY's hiring. "[A] showing that the employer treated a similarly situated employee differently is 'a common and especially effective method' of establishing a prima facie case of discrimination . . . ." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (quoting *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)). But when a plaintiff seeks to establish a prima facie case by pointing to disparate treatment of a similarly situated employee, the employee to whom the plaintiff points must be "similarly situated in all material respects," or, in other words, the other employee must be in "a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness*, 263 F.3d at 53-54 (citing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60 (2d Cir. 1997)). Stratton has not put forth any evidence of any similarly situated applicant who fared better in the EY Referral Program. By failing to show any comparator who was treated better, Stratton cannot rely on this theory to prove an inference of discrimination. *See Smith v. New Venture Gear, Inc.*, 320 F. App'x 33, 35-36 (2d Cir. 2009) (district court was correct to grant summary judgment to defendants on a disparate treatment claim where plaintiff did not show that similarly situated white employees received better treatment).

### B. Stratton Cannot Rebut EY's Non-Discriminatory Reason for Its Decisions

Because Stratton failed to prove a prima facie case, the Court need not reach the second and third stages of the *McDonnell Douglas* test. But it is clear that Stratton would fail at these stages of the analysis as well. EY has shown "a legitimate non-discriminatory reason" for rejecting Stratton's application. *Abrams*, 764 F.3d at 251. As previously discussed, EY has demonstrated that Stratton lacked the work experience required for the position. Def. 56.1 Stmt. ¶¶ 29, 34-35. The decision whether to hire Stratton given his lack of preferred (if not mandatory) qualifications was EY's to make. *See Crews*, 452 F. Supp. 2d at 525. Stratton has not presented any facts to rebut EY's non-discriminatory reason for rejecting his application, and he has not shown that the reason given was pretextual. *See Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996) (defendant was properly granted summary judgment when plaintiff "failed to put forth any evidence to suggest that defendant's articulated non-discriminatory reasons are pretextual"). His reliance on conclusory allegations is unavailing. Pl. 56.1 Stmt. ¶ 25-26; *see Smalls*, 396 F. Supp. 2d at 371-72 (dismissing plaintiff's race discrimination claims when plaintiff presented merely his belief that discrimination occurred, without any supporting facts). Consequently, Stratton's claims under Title VII and NYSHRL fail.

### C. Stratton's Disparate Impact Claim, Raised for the First Time on Summary Judgment, Also Fails

In Stratton's response to EY's motion for summary judgment he articulated—for the first time—what amounts to a disparate impact claim. As a general matter, whether pro se or not, "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint." *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (finding that the district court did not err when refusing to address claims first introduced in a pro se plaintiff's

11

response to a summary judgment motion); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

In the discretion of the court, however, "[a]n issue presented for the first time in a motion for summary judgment may be considered and treated as an amendment of the complaint." *Neri v. Coughlin*, No. 92 CIV. 7890 (SS), 1993 WL 464687, at *7 (S.D.N.Y. Nov. 9, 1993); *see* Fed. R. Civ. P. Rule 15(a)(2). When determining whether to consider newly-raised legal arguments, courts consider whether doing so would prejudice the defendant. *Compare Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) ("[A]t the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." (quotation marks and citations omitted)) *with Riehl v. Martin*, No. 9:13-CV-439 (GLS) (TWD), 2014 WL 1289601, at *7 (N.D.N.Y. Mar. 31, 2014) ("Because Defendants moved for summary judgment in lieu of filing an answer within weeks of service of Plaintiff's Complaint and prior to any discovery in the action, the Court will consider the new factual allegations and claims raised in Plaintiff's opposition papers.").

While the Court would be well within its discretion to reject this argument entirely because it was raised too late, considering the argument does not change the result because Stratton's statistical presentation is flawed. The statistics Stratton presents have some appeal: in 2014, of the 4,627 people referred for a position in Advisory throughout the country, 401 (8.7%) self-identified as African-American or black but only 16 out of 264 (6.1%) of the referrals that led to employment in the New York Advisory office self-identified as African-American or

black. On the surface, 8.7% compared to 6.1% might lead one to think that there is a disparate impact. On careful analysis, however, it is apparent that Stratton is comparing apples to oranges. Without knowing how many of the 4,627 total applicants were interested in New York employment, there is no way of knowing whether the observed difference is meaningful. By way of example, if only 1% of the applicants interested in employment in New York are African-American, the fact that 6.1% of the persons hired in New York are African-American suggests that whatever the New York recruiters are doing does not have a disparate impact on African-American applicants. On the other hand, if 20% of all the applicants interested in New York are African-American, the fact that only 6.1% of the people hired are African-American would be of concern. The point is that the macro statistics related to the race of all individuals interested in employment in Advisory countrywide cannot be compared to the race of all individuals actually hired in a single office.

If Plaintiff really wanted to pursue this theory of liability, it was his burden to adduce evidence to create a genuine question of fact regarding disparate impact.[6] Because the statistics he has presented are inadequate to do so, his disparate impact claim also fails.

## II.      Race and Unemployment Discrimination Claims under NYCHRL

NYCHRL claims are reviewed independently from claims under Title VII and NYSHRL and are considered under a more liberal framework. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). But even under NYCHRL's more liberal standard, when a plaintiff offers no evidence to rebut a defendant's non-discriminatory explanation, the

---

[6] The Court rejected Stratton's request for discovery that could have pertained to a disparate impact claim because that request was made after the close of discovery and was outside the scope of Plaintiff's claims as articulated by him in his Complaint. *See* Dkts. 31, 33. Moreover, the discovery Stratton requested does not appear to include the type of data that would be necessary to demonstrate that African-Americans were hired at a statistically significant lower rate by EY either nationally or in the New York office. *See* Dkt. 29.

claim fails.  *See St. Jean v. United Parcel Serv. General Serv. Co.*, 509 Fed. App'x. 90, 91 (2d Cir. 2013) (holding with respect to plaintiff's NYCHRL claim that, "given that plaintiff did not offer sufficient evidence in rebuttal to raise an issue of fact that defendants' actions in this regard were false, contrived, or pretextual, we affirm [summary] judgment" (citations omitted)).  The Court has already explained at length that Stratton has provided no evidence even remotely suggesting that EY failed to hire him because of his race.  Nor has Stratton shown that EY's preferred employment qualifications were a pretext for discrimination.

Stratton's unemployment discrimination claim also fails.  Stratton's online application indicated that he was unemployed, but the resume that the EY recruiter reviewed represented that Stratton was still employed.  Bentley Decl. Ex. B; Ex. E at 5.  Even assuming that the recruiter knew that Stratton was unemployed, he has presented no evidence that even remotely suggests that his employment status played any role in EY's decision-making.  Accordingly, Stratton has neither established discriminatory animus nor treatment.  *See Richards*, 2015 WL 4164746, at *10 (holding that defendant was entitled to summary judgment under NYCHRL because plaintiff failed to introduce any evidence to suggest she was treated less well as a result of her protected status).

With no evidence to suggest either race or unemployment discrimination, Stratton cannot succeed on his claims under NYCHRL.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the case, to mail this opinion to Plaintiff, and to note mailing on the docket.

**SO ORDERED.**

Date:  **October 27, 2016**
       **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**